We'll hear the next case, United States v. Chambers. Good morning, Your Honor. May it please the Court, my name is Jared Foley from Gallup-Dryer-Berkey for the appellant John Chambers by appointment under the Criminal Justice Act. The trial court excluded the testimony from an undercover officer in violation of Mr. Chambers' constitutional right to call witnesses in its defense. The undercover officer would testify concerning his observations when he visited my client's legal practice, which specialized in pistol licenses and investigations and administrative appeals, on March 10, 2017, which was before he was indicted on June 22, 2017. But outside of the conspiracy period, right? This is true, yes. Now, on that point, and I might as well address that point now, the government made the argument that this evidence wouldn't be relevant because it occurs outside the period, because the — You weren't there, either. I'm sorry? You wasn't there. Okay. I'll address two points. Okay. Okay. So, number one, the government speculated that perhaps he changed his procedures during that time period, that he started doing something different. But the government presented no evidence to this effect. And given the importance of this evidence, I think the prospect of whether or not he changed his procedures at some point should have been an issue for the jury. That could have gone to the weight of the evidence, but that should not have been a basis to exclude it. That's one. And number two, on the issue of the fact that he wasn't personally there, but he was there represented by his paralegal and spouse, Christina Chambers. And I want to make the point that the government disparaged his entire legal practice. That was their core narrative, that he essentially practiced law by bribe. So the fact that he wasn't there but represented his — was represented by his paralegal, I mean, you can't separate his paralegal, who was an integral part of his practice. The standard of review is abuse of discretion? Yes. So you have some arguments there, but how is this an abuse of discretion? Well, Your Honor, I feel like this is — because this is — this is evidence that was key to the government's narrative, went straight to the heart of the government's narrative, that essentially he practiced law by bribe, and it was key to the government, to our defense, that he just ran a normal legal practice. The government never said, and it's not really relevant to the charges, that he — the government never disputed that he was a lawyer, and they never said he didn't have any legitimate clients, did they? Well, they didn't expressly say that. But when you look at the whole of the representations made by the government, the impression that the juries left with is that, no, his entire legal practice was all bad. I mean, because when you — they did this in two ways. First, they made the point that his legal practice was permeated — permeated, rather, with misconduct and with fraud. And you can see this in statements throughout the — throughout the transcript. The government made statements like it's a case about a lawyer who paid bribe after bribe after bribe, that the defendant got special treatment for dozens of clients, largely unidentified, mind you, for years, that Villanueva said that he helped Chambers with over 100, again, largely unidentified, incident investigations. Again, excuse me. If your — even if that's true, let's just accept that as true for the sake of argument, that the government argued that there was no actual legal practice here, which I'm not sure is supported by the record, but just assume it is true. Wasn't your client able to put on the testimony of his wife to respond to that? Yeah. I mean, this is what — and the government makes this point as well. You don't get to put on every last bit of evidence you can ever scrape up, especially if it's really would-be suggestive of what we call good acts evidence, which is, of course, not admissible. So wouldn't it be fair for the district court, again, in its discretion, to say, well, you know what? You want to put on your wife, testify about how you had the best legal practice ever, and you just ran around practicing law, but the one thing we're not going to do is to say, like with the bank robber, there was a time he went into a bank and didn't rob a bank, so how could he be a bank robber? I mean, this is a point that the government makes, that we could have just relied upon Christina Chambers, but the issue with relying solely on Christina Chambers, his spouse, and his paralegal, was that Ms. Chambers being his wife was inherently compromised, whereas on the other hand, you have a perfectly good witness in this undercover officer, whose job it is to – it's his job to observe. He's unbiased. He has no stake in this fight. That's why he would have been the perfect witness here. This is why we should have been permitted to put him on. And it's the same – Isn't it the same thing, though? I guess I'm really not following. What was his observation that was so key that would show that he had never taken a bribe, that your client had never taken a bribe? What was the observation? I walked in and I did not see a crime being committed? No. No. I mean, I'm not trying to draw an inference that because he didn't commit a crime in this instance, he never committed a crime. That's not what I'm trying to do. What I'm trying to do is show the nature of the legal practice, his interaction with the legal practice. Now, to show that, you know, the way in which he interacted with Mrs. Chambers, the way the services were represented to him, the way that it was stated that standardized fees were aligned with discrete legal tasks. I mean, these are the kinds of things that show that he's running just a normal legal practice as opposed to some kind of bribe machine that's described by the government. That's why it's important. So let me think. So there are a few other points that the government made that I might as well address right now. The government suggested that we also should be able to rely upon some other witnesses that they put on. Like, oh, what? No, you had Aquilino or you had Beretta. You could have gotten what you wanted from those guys. But it's no answer that we could have relied upon the grace of the federal government to provide us with a witness that now for our benefit. A witness who we had no prior access to and who was put on for the government's own ends. We had the right to put on witnesses, our own witnesses in our own defense. I reserve the remainder. Thank you. We'll hear from the government. May it please the court. My name is Paul Monteleone. I represent the government on appeal and I represented the government at trial. John Chambers was convicted based on overwhelming and largely documentary, indisputable, and undisputed evidence. Evidence of the fact that an undercover officer engaged in an innocuous preliminary consultation with Chambers as paralegal after the charged period was properly excluded as irrelevant and prejudicial good act evidence. It couldn't possibly have affected the outcome in any case. I think I would just say that the idea that this related to the heart of the case is highly divorced from how the proceedings actually unfolded. There was really — there wasn't this disparagement. There wasn't any reference to permeation. There was a reference to a number of bribes, but there's really nothing that this undercover consultation even responds to. I think that unless the Court has any further questions, we would rest in our papers. All right. Thank you. Otto? Yeah. I think I just want to drill down on something, which is the government's narrative here. The government throughout the course of the trial presented the impression that pretty much every part of John Chambers' legal practice was bad or there was some kind of fraudulent aspect to it. Now, I went through some of the quotes here about describing voluminous allegedly criminal acts, which were largely unidentified by the government. For example, John Chambers helped with more than 100 investigations, largely unidentified. The government also argued that Chambers defrauded his own clients. Those clients were unidentified. The government made the point that his practice and things that he did in his practice were inherently suspicious. They took aim at his website because in his website, he makes the point that the — he makes the point that he knows people in the pencil license division, and this is part of the value of hiring him as an attorney. The government makes the point that, unlike most private attorneys, Chambers spent extensive time in the license division's offices, unlike most private attorneys. And the point is clear there, that he was different than other attorneys. The point was to disparage his entire practice. And then they went further to lump him in with known pistol license expediters and criminals such as Shia Lichtenstein, Frank Suhu, and Dominic Calandrello. Guilt by association. So all this put together presents the impression that his practice was simply a bribe machine permeated with fraud. This is what we were allowed to respond to, Your Honor. We were permitted to go back and say, no, he just runs a normal legal practice. That's all we wanted. All right. Thank you. No.